PHOEBE MINER, Defendant in Error; *vs.* ELMORE H. STAFFORD *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1927.*

1. STATUTES—*statute will not be given retrospective effect unless the intention is clearly shown.* While, as a general rule, an amendatory statute which repeats the former law on the subject will be treated as supplanting the former statute, it will not be given a retrospective effect so as to apply to cases arising under the old law unless the intention of the legislature to give it such effect is clearly shown.

2. SAME—*general rule as to effect of amendatory statute repeating former law on the subject.* Where an amendatory statute provides that a certain act or a certain section of an act shall be amended so as to read as repeated in the amendatory act, all such portions of the old act or section as are not repeated in the new act are repealed without any express words for that purpose, but such portions of the old law as are retained, either literally or substantially, are regarded as a continuation of the old law and not as a new enactment.

3. POLICE PENSIONS—*act of 1923 increasing amount of pension is not retrospective.*  The act of 1923 increasing the limitation of the allowance to the widow of a policeman losing his life in the performance of his duty is not retrospective, as it does not in express terms or by necessary implication declare that it shall apply to cases arising prior to its enactment.

FARMER, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. C. J. SEARLE, Judge, presiding.

HUBER & REIDY, for plaintiffs in error.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Edward Miner, an employee of the police force of the city of Rock Island, was killed in the performance of his duty on October 15, 1922. His salary was $120 a month. He left a widow, Phœbe Miner. On February 1, 1924, she made application to the board of trustees of the police pension fund for a pension, and on March 1, 1924, the board of trustees entered an order allowing her a pension in the sum of $50 a month from the date of her husband's death during her life until she should re-marry. Claiming to be entitled to a pension in the sum of $60 a month from July 1, 1923, she made a demand upon the board of trustees of the police pension fund for an allowance of that amount from July 1, 1923, which the board of trustees refused. Thereupon she filed a petition in the circuit court for a writ of *mandamus* requiring the board of trustees to allow a pension at the rate of $60 a month. The court sustained a demurrer to the petition, but the Appellate Court, upon her appeal, reversed that judgment and remanded the cause, with directions to overrule the demurrer. This was

done, and defendants electing to stand by the demurrer, a judgment was entered awarding the writ of *mandamus.* The defendants appealed, the Appellate Court affirmed the judgment, and a writ of error has been awarded to review the record.

Section 6 of the Police Pension Fund law of 1909 was in force at the time the petitioner's husband was killed and provided as follows: "Whenever any member of the police force of any city, village or town shall lose his life while in the performance of his duty or receive injuries from which he shall thereafter die, leaving a widow, or child, or children under the age of sixteen years, or parent who is dependent upon such policeman for maintenance and support, then, upon satisfactory proof of such facts made to it, such board shall order and direct that a yearly pension equal to one-half the salary received by said member, not to exceed $600 per year, shall be paid to such widow during her life," etc. (Laws of 1909, p. 136.) It was amended in 1923 so as to read in the same language, except that the limitation of $1250 is substituted for that of $600. (Laws of 1923, p. 253.)

Under the act in force at the time of her husband's death the defendant in error was clearly entitled to a pension of $50 a month, the payment of which could be enforced by a writ of *mandamus* against the board of trustees of the police pension fund. The next session of the legislature changed the limit for which a pension could be allowed from $600 to $1250, and under the amendment if a policeman having a salary of $120 a month was killed in the performance of his duty his widow would be entitled to a pension of $60 a month. The defendant in error claims that this change in amount applies to her, and that the board of trustees on her application, made after the passage of the amendment, which went into effect July 1, 1923, should have allowed her a pension at the rate of $60 from that date instead of one for $50 a month from the

date of her husband's death. The only question in the case is the application of the amendment of 1923 to pensions for loss of life while in the performance of duty before that date. The language of the amendment of 1923 does not indicate any intention on the part of the legislature that it should have any retrospective effect. It refers not to cases where any member of the police force has lost his life while in the performance of his duty leaving a widow who was dependent upon him, but to cases where a member of the police force shall lose his life leaving a widow who is dependent on him. The language refers to the future and not to the past. The amendment indicates no intention to increase pensions, the right to which had already accrued before the passage of the law.

It is a well settled rule of statutory construction that a statute will not be given a retrospective effect unless the intention of the legislature to give it such effect is clearly shown. (*People* v. *Chicago and Alton Railway Co.* 289 Ill. 282; *People* v. *Deutsche Gemeinde*, 249 id. 132.) The defendant in error contends that the amendment, by changing only the figures in the limitation of the amount of the widow's pension, intended to remove the limitation of pensions of widows of policemen who were killed in service prior to the passage of the amendment, and not to increase the pensions only of widows of policemen whose death occurred after the passage of the amendment. Her position is that the amendment simply amounted to a repeal of the limitation in the old law and substitution of a new and larger limitation; that the previous section having been amended as the same is repeated in the amendatory act, all those portions of the old section which are not repeated in the new are repealed.

Where the legislature enacts an amendatory statute providing that a certain act or a certain section of an act should be amended so as to read as the same is repeated in the amendatory act, all such portions of the old act or section

as are not repeated in the new act are repealed without any express words for that purpose, but such portions of the old law as are retained, either literally or substantially, are regarded as a continuation of the old law and not as a new enactment. (*Merlo* v. *Coal and Mining Co.* 258 Ill. 328.) The rule in such cases is stated in Endlich on Interpretation of Statutes, section 294: "A statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendment had always been there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed in view of the original statute as it stands after the amendments are introduced and the matters superseded by the amendments are eliminated." So it is said in Black on Interpretation of Laws, section 131: "An amendment of a statute by a subsequent act operates precisely as if the subject matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as regards any action had after the amendment is made, for it must be remembered that an amendment becomes a part of the original act, whether it be a change of word, a figure, line or entire section, or a re-casting of the whole language." Black cites in support of this proposition *Holbrook* v. *Nichol,* 36 Ill. 161. In that case a power of attorney authorizing a conveyance of land was executed on December 20, 1835, and its introduction in evidence was objected to because it was not acknowledged in conformity to the statutes then in force. It was acknowledged before a notary public, and section 9 of the act of 1827, which authorized certain officers to take acknowledgments of deeds and other instruments affecting the title to real estate, did not authorize notaries public to grant such certificates. (Laws of 1827, p. 98.) Section 16 of the same act required powers of attorney authorizing the conveyance of land to be acknowledged or proved in the same manner as deeds were required to be authenticated by that act. Notaries public not being named in the act,

it was contended that the act of a notary in taking the acknowledgment was without warrant of law. The act of 1827 was amended in 1829, (Laws of 1829, p. 24,) the first section of the amendatory act declaring that deeds of conveyance of lands may be acknowledged or proved before notaries public, and it was held that this amendment operated precisely as if it had been added to the act of 1827 at the time that act was adopted, so far as deeds might be authenticated before a notary public after the act of 1829 was adopted. Subsequent to that time the officers named in the two acts had the same power as if they had been named in the ninth section of the former act. The first section of the act of 1829 must be considered as enlarging the scope and operation of the act of 1827 precisely as though the additional officers had been named in the earlier act, and therefore, as the sixteenth section of the act of 1827 required powers of attorney to be acknowledged or proved in the same manner as deeds of conveyance, and after the adoption of the act of 1829 notaries public were authorized to take such acknowledgments, it followed that the power of attorney was acknowledged before an officer having competent authority for the purpose. It was not held, however, that the court, in considering after the passage of the act of 1829 a power of attorney acknowledged before a notary public after the act of 1827 and before the amendment of 1829, would give effect to the amendment with reference to the transaction of the acknowledgment of that power of attorney as enlarging the scope and operation of the act of 1827.

The doctrine declared is the established rule of law and has been announced and followed in many cases. As applied to the present case it means that in any case arising under the law after the amendment the law is to be construed and will operate precisely as if the statute had from its first enactment been in the same words as after the amendment was adopted. The case which is now before us

326–14

for consideration did not, however, arise after the amendment of the section. It arose before the amendment, and the rule referred to by Endlich and Black has no application to it. This case is, that the defendant in error's husband was killed on October 15, 1922, while in the performance of his duty as a police officer, leaving the defendant in error his widow, who was dependent on him for support, and that his salary was $120 a month. These facts constituted a cause of action which entitled the defendant in error to a writ of *mandamus* against the plaintiffs in error requiring them to allow her a pension of $50 a month and is governed by the statute in force when it arose. It was not affected by the subsequent change in the statute, which did not in express terms or by necessary implication declare that it should apply to cases which had arisen in the past. The act to revise the law in relation to the construction of the statutes, contained in chapter 131 of the Revised Statutes of 1874, enacts in section 4: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

The provisions of the above section were applied in the case of *Farmer* v. *People*, 77 Ill. 322, in which an indictment was returned at the May term, 1874, of the circuit court of Macon county for selling intoxicating liquor to a minor. The Dram-shop act took effect on July 1, 1874, and repealed the statute under which the indictment was found. Afterward, at the August term, 1874, the defendant applied to the court for a change of venue. The circuit court denied the application, apparently because the indictment was found before the Revised Statutes went into effect and under the supposition that the laws of 1845 and 1861 governed the application. It was held that the prosecution was not affected by the repeal of the statute and that the errors complained of on the trial were not well assigned, but it was further held that the practice prescribed by the act of 1874 governed in regard to the application for a change of venue and that under that statute the change should have been granted, and the judgment was reversed for that reason. A similar application was made in the case of *Roth* v. *Eppy*, 80 Ill. 283, in which an action under the authority of the act to provide against the evils resulting from the sale of intoxicating liquors, in force July 1, 1872, brought by a wife for injury to her means of support in consequence of the habitual intoxication of her husband by intoxicating liquors sold to him by the defendant was sustained, though the act had been revised by the Dram-shop act in force July 1, 1874. Other cases in which action under a repealed law has been sustained by the application of section 4 of chapter 131 are *People* v. *Zito*, 237 Ill. 434, and *Vulcan Detinning Co.* v. *Industrial Com.* 295 id. 141.

The judgments of the Appellate Court and of the circuit court are reversed and the cause is remanded to the circuit court, with directions to sustain the demurrer to the petition.    *Reversed and remanded, with directions.*

Mr. JUSTICE FARMER, dissenting.