STATE EX REL. SMITH, Respondent, vs. ANNUITY & PENSION BOARD OF THE CITY OF MILWAUKEE and others, Appellants.

*November 12—December 8, 1942.*

For the appellants there were briefs by *Walter J. Mattison,* city attorney, and *John J. Dolan,* assistant city attorney, and oral argument by *Mr. Dolan.*

*Paul Gauer, Robert J. Buer,* and *A. W. Richter,* all of Milwaukee, for the respondent.

MARTIN, J.  The respondent Charles J. Smith entered the employ of the city of Milwaukee on November 10, 1924, as a ward laborer in the department of public works and continued to be so employed up to January 1, 1941.  After the enactment of ch. 396, Laws of 1937, respondent applied for membership in the employees' retirement system of the city

of Milwaukee and was accepted as a member under the terms and conditions as provided in ch. 396, Laws of 1937, which became effective on January 1, 1938.

Sec. 5 (1) (a) of ch. 396, Laws of 1937, provided that all members in active service be retired forthwith upon reaching the age of seventy. This compulsory-retirement provision did not take effect until January 1, 1941. Respondent had on January 1, 1941, reached the age of seventy-five, and he, with other members of the retirement system, was retired as of that date. It is conceded that under the then existing law respondent became entitled to and was awarded a monthly retirement allowance of $28.16, which monthly allowance he has received and accepted each month since January 1, 1941. Respondent has rendered no further services for the city, on contract of hire or otherwise, since his retirement.

On June 28, 1941, the legislature passed ch. 308, Laws of 1941, amending various provisions of the employees' retirement system of the city of Milwaukee. The act provided that its provisions would become effective on the Monday following its adoption by the common council. On October 6, 1941, the common council, by resolution, adopted the provisions of ch. 308, effective on Monday, October 13, 1941. Ch. 308 amended sec. 5 of ch. 396, Laws of 1937, creating three new subdivisions of sub. (1) (b). Subd. 4 provides:

"If the retirement allowance of a member entitled to prior service is less than $60 per month, the pension shall be increased so that the retirement allowance is equal to $3 per month for each creditable year of service, provided that such increase shall not result in a total retirement allowance in excess of $60 per month."

Subd. 5 provides:

"The provisions of subdivision 4 of this paragraph shall apply to all persons who were formerly active members of the system and who were compulsorily retired on or after January 1, 1941."

After the adoption of ch. 308, Laws of 1941, respondent and others requested adjustment of their retirement allowances in accordance with the provisions of said chapter. The Annuity and Pension Board of the employees' retirement system refused to make the requested adjustment.

Under the employees' retirement system the employee is required to pay into the fund a rate according to his age when entering the system. If he resigns he withdraws his contribution. If he dies before retirement his beneficiary can withdraw his accumulated contributions. When the employee starts contributing the city also begins to contribute to the fund. The employee may retire when he reaches the age of sixty, and must retire at the age of seventy. The city matches the employee's contribution and gives a pension of twenty-five per cent of the employee's final average salary, if the employee has thirty-five years of service to his credit. The annuity plus the pension equals the retirement allowance. Persons in service when the system was established received credit for the prior years of service. The city makes full contribution for such prior service credit. The employee's contribution when made is placed in the annuity savings fund. The city's contribution is placed in the pension accumulation fund to the credit or on account of each member of the system. Upon the employee's retirement the actuary arrives at an annuity which is the actuarial equivalent of the employee's accumulated contributions. He also arrives at the amount of pension which represents the city's contribution placed to such employee's credit in the pension accumulation fund. Upon the employee's retirement, the annuity and pension fund is transferred to a new account in the employee's name in the annuity reserve fund. These funds represent the employee's retirement allowance, payable for life. All funds to the credit of the employee are made obligations of the city of Milwaukee.

Appellants' first contention is that when respondent retired from service on January 1, 1941, under the then existing retirement system as provided in ch. 396, Laws of 1937, which the common council had adopted, there was thereby created contractual obligations between the respondent and the city, which no subsequent act of the legislature or the common council could alter. In *State ex rel. O'Neil v. Blied,* 188 Wis. 442, 447, 206 N. W. 213, which involved the right of a widow beneficiary under secs. 42.20 to 42.54, Stats., under the 1921 Teachers' State Retirement Law, whose husband died on March. 17, 1925, while in service as principal of the Oshkosh high school, the legislature, by ch. 416, Laws of 1923, amended the 1921 act. The court said:

"It being clear, therefore, that we have here a contractual relationship between the state of Wisconsin and the deceased teacher, Albert E. O'Neil, the rights that accrued to him under the law as it was passed in 1921, and the provisions of which were complied with in all respects by him so as to then entitle him to benefit under its provisions, were of such a nature that it was beyond the rightful power of the legislature, by its amendment by ch. 416 of the Laws of 1923, to take away or modify without the consent of the other party to the contract." To same effect see *State ex rel. Stafford v. State A. and I. Board,* 219 Wis. 31, 33, 261 N. W. 718; *Morrison v. Board of Education,* 237 Wis. 483, 489, 297 N. W. 383.

The respondent concedes that his rights, by reason of his retirement and becoming a beneficiary under ch. 396, Laws of 1937, are contractual. But he argues that it does not follow that there may be no legislative change either in the employees' retirement system or amounts of benefits. It is clear that respondent's status and his rights are determined under the provisions of the employee's retirement system, as it existed at the time of his retirement. Thereafter he rendered no services to the city and made no contribution to the retirement fund. On June 28, 1941, however, the legislature

enacted ch. 308, Laws of 1941, amending the provisions of ch. 396, Laws of 1937. Subds. 4 and 5 of the amendments are quoted above. Subd. 4 provides that if the retirement allowance of a member entitled to prior service is less than $60 per month, the pension shall be increased so that the retirement allowance is equal to $3 per month for each creditable year of service, but limited not to exceed $60 per month. Subd. 5 provides that the provisions of subd. 4 shall apply to all persons *who were formerly* active members of the system and who were compulsorily retired on or after January 1, 1941.

Appellants' second contention is that the 1941 amendments to the employees' retirement system amount to appropriating public funds for a private purpose in violation of constitutional prohibition. This is the crucial question. Respondent was neither a city employee, nor a member of the retirement system of the city of Milwaukee at the time of the enactment of the 1941 amendments. Sub. (6) of sec. 3, ch. 396, Laws of 1937, provides:

*"Termination of membership.* Should any member in a period of ten consecutive years after last becoming a member be absent from service more than five years, or should he withdraw more than fifty per cent of his accumulated contributions, *or should he become a beneficiary* or die, he shall thereupon cease to be a member."

Respondent became a beneficiary under the 1937 law when he was retired on January 1, 1941. He thereupon ceased to be a member of the employees' retirement system. The 1941 amendments did not become effective until adopted by the city council on October 6, 1941, which action of the city council became effective on October 13, 1941.

Respondent claims that he is entitled to an additional pension of $20.09 per month from January 1, 1941, to February 1, 1942, and to a pension of $48.25 thereafter, during life. If his claim is valid, the funds to pay the pension

must come entirely from the public treasury of the city of Milwaukee. In *State ex rel. Wisconsin Dev. Authority v. Dammann,* 228 Wis. 147, 179, 277 N. W. 278, 280 N. W. 698, the court quotes approvingly from the decision of the United States supreme court in *Citizens' Savings & Loan Asso. v. Topeka,* 20 Wall. 655, 664, 22 L. Ed. 455, as follows:

"It is undoubtedly the duty of the legislature which imposes or authorizes municipalities to impose a tax to see that it is not to be used for purposes of private interest instead of a public use, and the courts can only be justified in interposing when a violation of this principle is clear and the reason for interference cogent. And in deciding whether, in the given case, the object for which the taxes are assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation."

At page 180 this court said:

"The course or usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, and the objects and purposes which have been considered necessary for the support and proper use of the government are all material considerations *as well as the rule that to sustain a public purpose the advantage to the public must be direct and not merely indirect or remote.*"

The court cites numerous cases from this and other jurisdictions, pages 180–182, as to what are considered public purposes, and what are considered to be private in purpose. The Wisconsin cases on what are held to be public purposes, are

as follows : To make provision for the care and education of children as wards of the state, *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651, 667, 79 N. W. 422; to pay bounties to soldiers in the military service of the country, *Brodhead v. Milwaukee,* 19 Wis. *624; to pay cash bonuses to those who served in the World War, *State ex rel. Atwood v. Johnson,* 170 Wis. 218, 175 N. W. 589; to give educational assistance to veterans of the World War, *State ex rel. Atwood v. Johnson,* 170 Wis. 251, 176 N. W. 224; to give aid to the sufferers of a tornado where necessary to avoid a public calamity affecting the whole state, *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 88 N. W. 596, 90 N. W. 1067.

What are held to be private purposes are as follows : Laws and ordinances conferring special benefits upon shoe factories and other manufacturing corporations, *Wendlandt v. Hartford Accident & Indemnity Co.* 222 Wis. 204, 268 N. W. 230; to same effect see *Suring v. Suring State Bank,* 189 Wis. 400, 207 N. W. 944; a statute authorizing taxation to administer the Keeley cure to, habitual drunkards who were unable to pay for treatment, held not to be a public purpose, *Wisconsin Keeley Institute Co. v. Milwaukee County,* 95 Wis. 153, 70 N. W. 68; *State ex rel. Garrett v. Froehlich,* 118 Wis. 129, 94 N. W. 50; a statute authorizing a town to levy a tax to aid in the erection of a private educational institution held invalid because a private purpose, *Curtis's Adm'r v. Whipple,* 24 Wis. 350. For cases from other jurisdictions as to what are public or private purposes, see cases cited, pages 180–182 of *State ex rel. Wisconsin Dev. Authority v. Dammann, supra.*

In *State ex rel. Atwood v. Johnson, supra,* the court, in sustaining the Soldiers' Bonus Law (ch. 667, Laws of 1919), at page 230, said that the learned counsel for the relator contended that the money appropriated under the act in question was not for a public purpose and did not conserve the common

interest and well-being of the people of the state; that where there is no public purpose in the sense of carrying on some part of the machinery of government, there is no power to tax; that where the public benefit which may come from an exercise of the taxing power is merely incidental or remote, the power is lacking; that there can be no legitimate taxation unless for the uses of the government levying the tax. He further said that it might be conceded that the purpose of the law must in some sense be a public purpose in order to justify the exercise of the taxing power; that under the act, the money appropriated was awarded "as a token of appreciation of the character and spirit of their patriotic service, and to perpetuate such appreciation as a part of the history of Wisconsin." The court quoted from the opinion by Chief Justice DIXON in *Brodhead v. Milwaukee, supra,* as follows (p. 231) :

"I think the consideration of gratitude alone to the soldier for his services, be he volunteer, substituted or drafted man, will sustain a tax for bounty money to be paid to him or his family. Certainly no stronger consideration of gratitude can possibly exist than that which arises from the hardships, privations, and dangers which attend the citizen in the military service of his country; and all nations have ever so regarded it. Who will say that the legislature may not, in considera-tion of such services, either directly or indirectly, or through the agency of the municipality or district to which he is credited, give to the soldier or his family a suitable bounty after his enlistment, or even after his term of service has expired? I certainly cannot."

At page 233 the court said :

"There is another question which is important in consider-ing the public purpose of the law. The assertion of power for a long period of time on the part of the state in adopting legislation similar to that herein involved, while perhaps not controlling, is entitled to great weight on the question of public purpose. The state of Wisconsin from early times has passed statutes awarding money by taxation for purposes not

more public than the purpose involved in the act under consideration."

The court held upon principle and authority that the purpose of the act was a public purpose within the meaning of the constitution.

In *State ex rel. Dudgeon v. Levitan,* 181 Wis. 326, 193 N. W. 499, in sustaining the Teachers' Retirement Act (ch. 459, Laws of 1921), the court said that counsel contended that the law appropriated public moneys for a private purpose and was violative of sec. 26, art. IV, of the state constitution, which provides that "the legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office." The court said that the law provided pensions for teachers already in the service, the amount of which pension was computed with reference to the entire service of the teacher—the period before the enactment of the law as well as the period thereafter; that this was the feature claimed to vitiate the law; that it was not seriously contended that the law appropriated public funds for a private purpose or granted extra compensation so far as those engaging in service subsequent to the enactment of the law were concerned; but it was urged that the provision referred to operated to accomplish both results with reference to the teachers in service at the time of the enactment of the law; that such a contention misconceived the purpose of the law, which was to promote a higher efficiency in the educational system of the state by retaining in service seasoned and experienced teachers; that bearing in mind that our constitution is not a grant of, but a limitation upon, legislative power, it was apparent that the legislature might adopt any and all measures which in its judgment would promote the efficiency of the schools and other educational institutions of the state unless prohibited

by some express constitutional provision; that if in its judgment the pension system would induce experienced and competent teachers to remain in the service, and that thereby the cause of education would be promoted, the money or funds appropriated for the payment of pensions was appropriated for a public purpose unless the court could say that the pension system would have no such result, this the court could not do.

The reasons stated for sustaining the Soldiers' Bonus Law and the Teachers' Retirement Act are not present in the instant case. In 1 Dillon, Mun. Corp. (5th ed.) p. 754, sec. 430, referring to pensions for municipal services, it is said:

". . . To be valid under constitutional requirements, the pensions must be conferred upon persons who at the time of receiving the right to them are officers or employees of the municipality. They cannot be conferred upon persons who had, previously to the grant, retired from the service of the city. A pension to such persons is an appropriation of public funds for the benefit of individuals, and a gift or gratuity." To same effect see *Mahon v. Board of Education,* 171 N. Y. 263; *People v. Abbott,* 274 Ill. 380; *Porter v. Loehr,* 332 Ill. 353, 360; *Raines v. Board of Trustees Pen. Fund,* 365 Ill. 610, 615; *Mead v. Acton,* 139 Mass. 341; *Lamb v. Board of County Peace Officers Retirement Comm., etc.,* 84 Pac. (2d) 183.

In 40 Am. Jur. p. 972, sec. 16, in reference to pensions for municipal employees, it is said:

"Pension acts are valid only in so far as they confer pensions upon persons who at the time of the grant of the right to receive them are officers or employees of the municipality. And a statute which authorizes a municipal corporation to pay a pension to persons who were formerly in its service but have retired or withdrawn therefrom before the statute was enacted is unconstitutional."

Respondent cites *Fritzke v. P. S. Teachers' A. & R. F. Trustees,* 201 Wis. 179, 229 N. W. 543, as authority to

sustain his claim for a pension under the 1941 amendments, although he had retired before the amendments were adopted. The case does not so hold. Fritzke, a truant officer, on or about July 28, 1922, was granted a leave of absence to September 1, 1923, without pay. On September 4, 1923, the school board accepted Fritzke's resignation as of "September 1, 1923, after leave." Meanwhile, by ch. 270, Laws of 1923, which took effect on June 21, 1923, the legislature amended the statute relating to teachers' annuity and retirement fund in cities of the first class, so as to extend the benefits of the fund to truant and attendance officers. On August 31, 1923, Fritzke deposited with the treasurer of the city of Milwaukee, $565.24, which was the amount required by statute to be deposited to entitle him to an annuity. At page 181 the court said:

"The leave of absence granted plaintiff until September 1, 1923, did not terminate or affect the status, or contractual relationship, that had formerly existed. That relationship continued until September 1, 1923, even though he did not actually perform any service or receive compensation. Until the expiration of such leave he stood in exactly the same position, so far as the continuance of the existing contractual relationship was concerned, as he did at the time such leave was granted."

Respondent cites *Miner v. Stafford,* 239 Ill. App. 346, and quotes from the opinion of the appellate court. Counsel apparently overlooked the fact that that case was appealed to the supreme court, which reversed the decision of the appellate court. The supreme court opinion appears in 326 Ill. 204, 157 N. E. 164. At page 209 the court said:

"The case which is now before us for consideration did not, however, arise after the amendment of the section. It arose before the amendment, and the rule referred to by Endlich and Black has no application to it."

Several other cases cited by respondent have been examined. None of them are applicable to the facts in the instant case.

Respondent not being an employee of the city of Milwaukee, nor a member of the employees' retirement system at the time the 1941 amendments became effective, any additional pension paid to him would be for a private purpose. Appellants' motion to quash the alternative writ of *mandamus* should have been granted.

*By the Court.*—Order reversed. Cause remanded with directions to grant appellants' motion to quash the alternative writ of *mandamus*.