**John Blough et al., Plaintiffs-Appellees, v. Gust Ekstrom et al., Defendants-Appellants.**

**Gen. No. 11,007.**

Second District.
August 12, 1957.
Released for publication August 30, 1957.

McConnell, Kennedy & McConnell, of Peoria, and LaVerne E. Anderson, of Rockford, for appellants.

Berry & Simmons, and John F. Pelgen, of Rockford, for appellees.

JUSTICE CROW delivered the opinion of the court.

This is a complaint by seven plaintiffs, John Blough, LeRoy Dearth, George Gould, J. Duncan Graham, Arnold Gustafson, J. Maurice McGill, and William Rafferty, in seven counts—one for each plaintiff—against the named defendants as the Board of Trustees of the Police Pension Board of Rockford. Each Count, respectively, alleges that the respective plaintiff concerned was in service as a policeman in the Police Department of Rockford for varying periods of time —the plaintiff Blough from December 6, 1945 to June 13, 1948, the plaintiff Dearth from April 25, 1948 to November 15, 1948, the plaintiff Gould from August 19, 1945 to March, 1950, the plaintiff Graham from July 1, 1943 to June 7, 1952, the plaintiff Gustafson from March 17, 1947 to March 12, 1951, the plaintiff McGill from July 1, 1942 to March 1, 1949, and the

plaintiff Rafferty from July 24, 1944 to September 16, 1950. Each Count, respectively, then alleges that during such service there was deducted from the plaintiff's pay certain contributions to the police pension fund, in accordance with the police pension act, which were delivered to and held by the defendants, or their predecessors, as the Board of Trustees of the Police Pension Board of Rockford; subsequent to the termination of his services the plaintiff made demand on the defendants for refund of his contributions, which has been refused; Ch. 24, Ill. Rev. Stats., 1955, par. 904a provides that:

"In case any police officer is separated from the service of such city, village or incorporated town before he has served twenty years, all contributions made by him to the fund shall upon request of the police officer be returned to him.";

the plaintiff's service terminated before he had served twenty years; and there is now due each plaintiff varying amounts, for which judgments are prayed. A motion, as amended, to dismiss was overruled. The motion, as amended, to dismiss was based primarily upon the contention that Ch. 24, Ill. Rev. Stats., 1955, par. 904a, upon which the plaintiffs rely, was approved March 31, 1953, became effective then or sometime thereafter, was intended to operate prospectively only and not retroactively, and since all of the plaintiffs had ceased performing their services prior to the effective date of the statute it did not apply to them. The defendants' answer admits the factual allegations of the complaint, but denies there is anything due and owing the plaintiffs, and realleges the substance of the grounds set forth in their motion, as amended, to dismiss, to the effect the complaint states no cause of action, and prays judgment for the defendants. A motion by the plaintiffs for judgment in their favor on

156

the pleadings was allowed, and judgments were so entered for the respective plaintiffs, in the varying amounts prayed in the complaint, against the defendants. The defendants have appealed. There are no controverted questions of fact.

Ch. 24, Ill. Rev. Stats., 1955, par. 904a, the present statute, reads, in full, as follows:

"In case any police officer is separated from the service of such city, village, or incorporated town before he has served twenty years, all contributions made by him to the fund shall, upon request of the police officer, be returned to him.

Acceptance of such refund shall bar such police officer and his dependents from any further participation in the benefits accorded by this Act, subject to restoration upon reentry into service and payment to the fund of the amount of the refund plus interest at the rate of 2% from the date of the refund until the date of repayment."

That provision constitutes section 14, as added by an Act approved March 31, 1953, of "An Act to provide for the setting apart, formation, and disbursement of a police pension fund in cities, villages, and incorporated towns having a population of not more than 200,000 inhabitants," approved June 14, 1909, as amended. The Act approved March 31, 1953 is called, literally, "An Act to add section 14 to" etc., and it says that "Section 14 is added to" etc., and "the added Section to read as follows" etc.: Laws, 1953, p. 28. The whole statute, or act approved June 14, 1909, as amended, of which that section 14 is now a part, as so added in 1953, is Ch. 24, Ill. Rev. Stats., 1955, pars. 892–904g, and becomes relevant to the issues herein.

All of the plaintiffs, former police officers of Rockford, were separated from that service prior to March 31, 1953, the date of approval of the act adding that

157

section 14, Ch. 24, Ill. Rev. Stats., 1955, par. 904a—to the present statute. The defendants urge that section 14, par. 904a, was intended to and does operate prospectively only, and not retroactively, and the plaintiffs having been separated from the service prior to the effective date of that section it is not applicable to them. The plaintiffs urge that that section was intended to and does operate retroactively, as well as prospectively, and allows and requires a return of the contributions made to the fund by the plaintiffs as former police officers who had become separated from the service prior to the effective date of that section.

The original act approved June 14, 1909, Laws, 1909, p. 133, contained no provision at all for the return or refund to police officers who became separated from the service before serving 20 years, or any number of years, prior to becoming eligible for a pension, of the contributions made by them to the police pension fund. Evidently that condition of the law prevailed for many years—until 1943. Previously, in 1931, the statute was amended to add a new section—section 14—thereto, Laws, 1931, p. 373, which 1931 amendment, though not now material, we shall set forth to preserve the continuity of events. It read:

"Sec. 14. Nothing in this Act contained shall be held to apply to special police officers, nor to police officers appointed for temporary duty only, nor to appointees serving probation, nor to temporary appointees."

Then, in 1943, by an act approved July 23, 1943, Laws, 1943, p. 428, that section 14 (as added in 1931) was, with other sections, amended to read in this manner:

"Sec. 14. Nothing in this Act contained shall be held to apply to special police officers, nor to police officers appointed for temporary duty only, nor to temporary appointees, but this Act shall apply to officers serving initial probationary periods. Such officers shall make

158

contributions in the same manner as other police officers. In case any police officer retires from the service of such city, village or incorporated town before he has served twenty years, all contributions made by him to the fund, plus a reasonable interest thereon, shall be returned to him."

Then, in 1947, by an act approved August 8, 1947, Laws, 1947, p. 529, that section 14 was repealed—the repealer language reading: "Section 14 of said Act is repealed." From that date, August 8, 1947, of that repeal of the former section 14 as it had been amended July 23, 1943 to provide for the return or refund of police officers' contributions upon their retirement under certain circumstances, until the adding of the present section 14 by the act approved March 31, 1953, Ch. 24, Ill. Rev. Stats., 1955, par. 904a, there was again no provision at all for the return or refund to police officers who had become separated from the service prior to becoming eligible for a pension of the contributions made by them to the police pension fund. The law in that respect, in other words, was during that period the same as what it had been from the adoption of the original act, June 14, 1909, up to the amendment of the previous section 14, July 23, 1943. As of 1953, that is to say, when the present section 14 was added, there had been since 1909—for 44 years— no provision in the statute for the return or refund of officers' contributions upon their becoming separated from the service prior to becoming eligible for a pension—except for a brief 4 year period between 1943–1947.

■ ■ The statutory police pension fund provided for by this statute requiring compulsory participation and compulsory contributions by the police officers confers no vested rights upon the police officers or other participants; the act is based on the sovereign power of the state to provide for the general welfare

of the employees and society generally and it is not in the nature of a contract between the police officers or other participants and the state or municipality; the Legislature may alter, amend, or repeal a statute of this type without interfering with any vested contractual rights, because there are no such vested contractual rights: Keegan v. Board of Trustees (1952) 412 Ill. 430. Such a pension under such a statute is in the nature of a bounty springing from the appreciation and graciousness of the sovereign, and may be given, withheld, distributed, or recalled at its pleasure; the compulsory contributions into the fund by way of exactions from the salaries of the police officers are not in fact payments by the officers; their employment is accepted with knowledge that certain amounts will be deducted each month and placed in the pension fund; such are not first segregated from the public funds so as to become the private property of the officers and then turned over to the pension fund, but are set aside or transferred from one public fund to another, and remain public money to be dispensed or withdrawn at will and over which the officer from whose salary they are deducted has no control and in which he has no right: Raines v. Board of Trustees (1937) 365 Ill. 610; Eddy v. Morgan (1905) 216 Ill. 437. A statute of this type may, as to the eligibility requirements for a pension in years of service and age of the officer, be modified, revised, amended, superseded, or repealed by the Legislature after the police officer's original appointment: Pecoy v. City of Chicago (1914) 265 Ill. 78; or after the police officer's retirement and application for a pension under the statute as it existed at the time of his retirement and application: People ex rel. Drea v. Hanson (1928) 330 Ill. 79.

██ ██ The unconditional repeal of a statute not affecting vested rights, without a saving clause, stops all pending actions where the repeal finds them; where

nothing is substituted for the statute that is repealed the effect of the repealer is to obliterate the former statute as completely as if it had never been passed: People ex rel. Eitel et al. v. Lindheimer (1939) 371 Ill. 367; it must be considered, under those circumstances, as if it never had existed: People v. Carpenter (1916) 274 Ill. 103.

■ The plaintiff police officers, therefore, had no vested rights in this compulsory police pension fund, or in their contributions from salaries which went into it and which, with the tax moneys and other moneys provided for, were set apart by the municipality to constitute the police pension fund, or to any return or refund of such contributions. Such were simply set aside or transferred from one public fund to another, and remained public money to be dispensed or withdrawn at will by the municipality, pursuant to law, and over which the officers had no control and in which they had no vested rights. The contributions of the plaintiff former police officers here involved which went into this police pension fund do not constitute their own private moneys, as the plaintiffs argue. This type of statute and pension fund is not in the nature of a contract between the police officers or other participants and the state or municipality and is not subject to the rule of construction that if there be ambiguity it will be construed most strongly against him—the state, according to the plaintiffs—who drew it, as the plaintiffs urge. And, though forfeitures, of course, are not favored, there is no question involved here of forfeiture of the plaintiffs' contributions, as they contend, because such never became their private property but remained public money simply set aside or transferred from one public fund to another—the police pension fund. The former section 14 as amended July 23, 1943 providing for a return under certain circumstances of such contributions to officers who

retired from service before serving 20 years was simply an exercise of the sovereign's power to give or distribute or dispense the same at its pleasure. The operative event requiring the application of that former amended section 14 was "In case any police officer retires" etc., and, none of the plaintiffs having so retired during the short time that former amended section 14 was in existence such operative event did not occur and that former statute never came into operation or application as to them. That former amended section 14 having been unconditionally repealed by the act of August 8, 1947, without a saving clause, and nothing having been substituted for it, that obliterated it as completely as if it had never been passed and it must be considered as if it never had existed. Such was again simply an exercise of the sovereign's power to withhold, or recall, or withdraw the fund and the contributions portion thereof at its pleasure. Such repealer interfered with no vested contractual rights. The plaintiffs can base no claim upon that former amended section 14 so repealed in 1947.

 With reference to the construction of the present section 14 of the statute, as added by the act approved March 31, 1953, Laws, 1953, p. 28, Ch. 24, Ill. Rev. Stats., 1955, par. 904a, the courts have frequently held that a statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions that intent will prevail without resorting to other aids for construction; that a court has, of course, no legislative power and may not incorporate into a statute provisions not within the intention of the General Assembly as expressed in the statute itself: American Steel Foundries v. Gordon (1949) 404 Ill. 174; that we must seek the construction of statutory language in the usual, popular meaning attaching to the words used, unless the spirit and purpose of the act, as shown by its pro-

162

visions, enlarges or alters that meaning, and that the plain and obvious meaning of the language used by the Legislature is the safest guide to follow in construing any act: Svithiod Singing Club v. McKibbin (1942) 381 Ill. 194.

■ The operative events requiring the application of the present section 14 and the return to a police officer of the contributions made by him to the fund are "In case any police officer is separated from the service . . . before he has served twenty years" the contributions "shall, upon request of the police officer" be returned. That language—in particular, "is separated" and "shall, upon request,"—is in the present or future tense and looks to events occurring in praesenti or in futuro from and after the enactment of the present section 14, and not to events having already occurred in the past prior to such enactment. Words in the present tense include the future where not inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute: Ch. 131, Ill. Rev. Stats., 1955, pars. 1, 1.02, but we cannot say they also include the past unless the Legislature much more clearly indicates such intent. The party who is referred to and upon whose request the return of the contributions may be made is one who is, in praesenti or in futuro, at the time of separation and at the time of such request, a "police officer," and not one who has at some time in the past been a police officer but has previously become separated from the service and hence no longer is such police officer at the time of the request. The provision in the second paragraph of the present section 14 to the effect that "acceptance of such refund shall bar such police officer and his dependents from any further participation in the benefits accorded by this Act" etc. is further support for what was intended by the first paragraph, because under that provision the

163

only party the Legislature is referring to is one who is in praesenti a "police officer" at the time of "acceptance of such refund" and who, were it not for such separation from the service and return of contributions, would, in futuro, be eligible for "further participation in the benefits accorded by this Act," and the Legislature is not thereby referring to one who has been, but is not in praesenti a "police officer" at the time of "acceptance of such refund" and who, because of his prior separation from the service, would not in any event be eligible for "further participation in the benefits accorded by this act." Such a provision would have been completely unnecessary as to a party who had previously been separated from the service. This present section 14 does not say "In case any police officer is or has heretofore been separated" etc., the contributions "shall upon his request" etc. be returned, and we are not at liberty to interpolate such language into the section.

 Whether the present section 14, Ch. 24, Ill. Rev. Stats., 1955, par. 904a, operates prospectively only, or also operates retroactively, is—aside from constitutional questions, which we do not believe we reach here—a question of legislative intent, and in determining that intent there is a strict rule of construction against retroactive operation and a strong presumption that the Legislature intended the statute to operate prospectively only and not retroactively: People ex rel. Manczak v. Carpentier (1954) 3 Ill.2d 556; it has long been a canon of statutory construction that a statute will be construed as prospective in character and operation and not retroactive in the absence of express language declaring it to be retroactive: N. Y. Life Ins. Co. v. Murphy (1944) 388 Ill. 316, or unless the language employed is so clear that it will admit of no other construction: People ex rel. Nelson v. Anning-Johnson Co. (1951) 408 Ill. 302, or unless

164

the will of the Legislature to give it a retroactive effect is declared in terms so plain and positive as to admit no doubt—any doubts being resolved against the claimed retroactive effect of the statute: Eddy v. Morgan, supra; or unless the intention of the Legislature to give it retroactive effect is clearly shown: Miner v. Stafford (1927) 326 Ill. 204.

In Eddy v. Morgan, supra, it was held that an amendment of another police pension fund statute to give widows of retired pensioned deceased officers who were at their decease receiving pensions the right to succeed to the deceased officer's pension did not apply retroactively to the case of a widow whose retired pensioned deceased officer husband had died two years before the amendment was adopted—it operated only prospectively, in futuro, as to retired pensioned officers who died after the adoption of the amendment.

And in Miner v. Stafford, supra, it was held that an amendment of another part of the same police pension fund act of June 14, 1909 which is involved in the case at bar which increased to $1,250 from $600 per year a maximum overall limitation on the pension to a widow of a police officer who loses his life in the performance of duty did not apply retroactively to the case of a widow whose deceased officer husband had lost his life in the performance of duty before the amendment was adopted—the language referred only prospectively to the future and not retroactively to cases which had arisen in the past.

The plaintiffs argue that the former section 14 originally added in 1931, Laws, 1931, p. 373, originally provided merely that the Act should not apply to special police officers, or officers appointed for temporary duty, or appointees serving probation, or temporary appointees; that the 1943 amendment thereof, Laws, 1943, p. 428, providing, inter alia, that in case

any police officer retires from the service before serving 20 years all contributions made by him to the fund, plus a reasonable interest, shall be returned to him, was out of context and in the wrong place; that the 1947 repealer of that former section 14, as so amended, Laws, 1947, p. 529, was intended by the Legislature only to repeal the part thereof relating to special police officers etc., and not the part relating to return of contributions upon retirement of officers, and the repeal of the whole section was a mistake or error; that the 1953 act adding the present section 14, Laws, 1953, p. 28, being solely a return of contributions section, was intended to correct that mistake or error in its entirety and not just for the future, is simply a reenactment of the part of the former section 14 relating to return of contributions, picks up and reinstates the 6 year intervening period or hiatus between 1947–1953, and is merely a continuation of the former section 14 as amended in 1943 so far as return of contributions is concerned. They call attention to Ch. 131, Ill. Rev. Stats., 1955, par. 2, to the effect that "the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment." No authority is cited for such theory other than three cases referring to well etstablished general principles of statutory construction. We cannot adopt such analysis.

The 1943 amendment of the former section 14 providing, inter alia, for a return of contributions under certain circumstances may, or may not, have been out of context and in the wrong place, but, if it was, such seems irrelevant—it was nevertheless in the statute, whether in the right place or not. The 1947 repealer of that former section 14 was an absolute, unconditional repeal of the entire section, with no saving clause, and with nothing substituted for it. There is

nothing to indicate the Legislature intended to repeal only a part thereof, or that the repeal of the whole section was a mistake or error, or that the Legislature was not cognizant of what it was doing. The Legislature, in fact, in 1949, Laws, 1949, p. 534, added a new section 19 relating to the subject of special police officers etc., and in 1951, Laws, 1951, p. 517, amended that new section 19, but did not in either 1949 or 1951 do anything at all about the subject of refund of contributions, which would seem to indicate the Legislature was quite aware of its 1947 absolute repealer of the entire former section 14, which had related to both subjects, had made no mistake in repealing the whole section, and had no intention to continue the refund of contributions provisions or readopt or reinstate them. Ch. 131, Ill. Rev. Stats., 1955, par. 2, can have no application where there is a ten year gap between the 1943 amendment to the former section 14 and the 1953 addition of the new section 14, where the former section 14 has in 1947 been absolutely repealed, where there is then a six year gap between the 1947 repealer and the 1953 addition, and where there are substantive differences between the 1943 and 1953 provisions. There was no "prior statute" and no "prior provisions," within the meaning of Ch. 131, par. 2, in existence when the 1953 act was adopted because such had been repealed in 1947, six years before, had been thereby obliterated as completely as if they had never been passed, and must be considered as if they never had existed. Even had the 1953 act constituted a repeal of the 1947 repealer of the former section 14, as amended in 1943, which it did not, such would not have revived the former section 14 or any part thereof: Ch. 131, Ill. Rev. Stats., 1955, par. 3. Much less can the 1953 act be said to have such effect when, as is the case, it does not repeal the 1947 repealer.

167

The plaintiffs also argue that the present section 14, as adopted in 1953—Ch. 24, Ill. Rev. Stats., 1955, par. 904a—and particularly the language "police officer" in the phrase "In case any police officer is separated from the service," must be read in conjunction with section 1 of the statute, par. 892, and in conjunction particularly with the language of a part of section 1 to the effect that ". . . 'policeman' or 'policemen,' as used in this Act, shall include all persons who at the time this Act become effective, are now or have been or shall be employed by the police department or police service . . . and all persons who are now, have been, or shall hereafter be appointed to any position which is classified by the Civil Service Commission . . . as in or a part of or connected with police service or police department . . . and all persons appointed, reappointed, reemployed, or reinstated, sworn, or designated by law as policemen . . . and including any person who has served, is serving or shall hereafter serve in any capacity in the legally constituted police department or as a member of the police department or police service, . . ."—that "police officer" or "policeman" is used in the past, present, and future tenses, and the statute covers them all, and when so read the present section 14 (par. 904a) means that if any person who has been a police officer is separated from the service before he has served 20 years all contributions made by him to the fund shall upon his request be returned. Evidently, under the plaintiffs' theory, it would make no difference how long ago the person had been a police officer, or how long ago he had become separated from the service, or whether the separation occurred before or after the 1953 addition of the present section 14, or whether at the time of such separation there was or was not any statutory provision for a return or refund of contri-

168

butions. No authority is cited for such theory, and we hold it untenable.

Such overlooks that part of section 1 (par. 892) immediately following the foregoing parts thereof to which the plaintiffs call attention, and which reads: ". . . provided, however, that no such policeman shall be entitled to receive any benefits under the terms of this Act unless (a) he shall make written application to the Board of Trustees hereinafter provided for to come under the provisions of this Act, (b) he shall be found upon the examination of a duly licensed physician selected by said Board of Trustees to be physically and mentally fit to perform the duties of a policeman, and (c) he shall pay to the Fund a sum equal to the amount he would have paid had deductions been made from his salary during the period of his service extending from the date the municipality became subject to the provisions of this Act or the date of his original entry into the service, whichever is later; . . ."

Further, under this act, par. 894, 895, and 897, it is only "any person—who, at the time of the taking effect of this Act is a member of any regularly constituted police force—or hereafter becomes a member of such a police force,"—or "any member of a regularly constituted police force,"—or "any member of the police force," who, or whose widow etc., may be or shall be paid a pension. Pension acts of this type, to be valid, can only confer pensions upon persons who, at the time of receiving them, are officers or employees of the municipality, and this Act does only that, by pars. 894, 895, and 897; pensions cannot be conferred upon persons who previously to the grant have retired from the service of the municipality: People ex rel. Kroner v. Abbott (1916) 274 Ill. 380— and this Act does not purport to do that. The "provided, however" part of section 1—par. 892, referred

169

to above, which immediately succeeds the other parts thereof to which the plaintiffs refer, is in conformity with that principle, and, in effect, simply means that no policeman shall be entitled to receive any benefits under the Act—pensions, return of contributions under certain circumstances, or otherwise—unless at the time of receiving them he is currently, in praesenti, an officer—however and in whatever legal manner he may have acquired that current status, i.e., whether by previously having been employed, having been appointed, or having served, and then being later and currently reemployed, reappointed, or reinstated—or otherwise. To say, as the plaintiffs do under their analysis of the present section 14, par. 904a, read in conjunction with section 1, par. 892, that those sections mean that retired or separated former officers' contributions may be and shall be returned to them under section 14 even though at the present time of their being proposed to receive such they are not officers of the municipality, having been previously to the grant and previously to the effective date of section 14 retired or separated from the service, is incongruous, would place section 14 out of harmony and out of character with the rest of the Act and with the established case law, and would cast doubt upon its constitutional validity to that extent if so interpreted. We do not believe the Legislature intended by using the past tense "have been . . . employed" etc. in its definition of "policeman" and "policemen" in the foregoing part of section 1, par. 892, to make that part inconsistent with the immediately following part of the same section and with the other parts of the Act and with the established case law, and violative of the basic philosophy underlying the validity of pension fund acts of this type.

Under this Act, and particularly under par. 894, the officer must have served for a period of twenty years

170

or more upon the regularly constituted police force of the municipality to become entitled to a pension, and the amount thereof is subject to some percentage increase for each additional year over twenty years which he has served, with a maximum limitation. We believe the use of the past tense "have been . . . employed," "have been . . . appointed," "has served" etc. in that part of section 1, par. 892, defining "policeman" or "policemen," as referred to by the plaintiffs, was primarily precautionary for the purpose of more clearly permitting current, in praesenti, officers, otherwise eligible for a pension, to include any years of previous service they may have had before the Act went into effect in computing the 20 years service eligibility requirement and any percentage increase in the pension for additional years over the 20, so that they need not necessarily serve the whole 20 years after the Act went into effect before becoming eligible.

A similar question arose in Sommers v. Patton (1948) 399 Ill. 540, as to certain 1947 amendments to a fireman's pension fund act, and the court held that where section 1 of the Act defined "fireman" and "firemen" to include, inter alia, "all persons who at the time this act becomes effective are entitled to the benefits of an act entitled" etc., and "all persons who have been . . . appointed . . . in the fire service," and section 6 provided benefits for widows etc. of "firemen" and provided for an increase in burial allotments for "any fireman" dying, leaving no beneficiaries, the language "fireman" or "firemen" did not include those who may have previously served and have retired prior to the effective date of the amendments; the Legislature manifestly intended to benefit only, and apply the amendments only to, those in service when the statute took effect or thereafter in service; a "retired fireman" could not be considered a "fireman"; the provisions apply only to present and

171

future firemen and not retired firemen—there is no express provision making the Act as amended applicable to retired firemen or their beneficiaries.

We have read the following cases cited by the plaintiffs—People ex rel. Simpson v. Funkhouser (1944) 385 Ill. 396; Inter-State Water Co. v. City of Danville (1942) 379 Ill. 41; Donahue v. Board of Trustees et al. (1931) 263 Ill. App. 568; Ryan v. Foreman (1914) 262 Ill. 175; Cedar Park Cemetery Assoc. v. Village of Calumet Park (1947) 398 Ill. 324; and Forest City Ins. Co. v. Hardesty (1899) 182 Ill. 39. The first two restate familiar general principles of statutory construction, which we have endeavored to apply, so far as applicable. The third holds a particular person was a "policeman" and eligible for a pension, and the Act should be given a liberal construction. The fourth holds an adopted child of a policeman is eligible as a beneficiary under another pension fund act. And the fifth and sixth relate, respectively, to principles of construction of agreements or contracts, and to a claimed forfeiture under an insurance policy—neither of which matters are here involved.

Under the decided cases applicable, we are unable to find in the words or provisions of the present section 14, so added by the act approved March 31, 1953, that which satisfies us that it was the intention of the Legislature that it should have a retroactive effect: Eddy v. Morgan, supra; we find no suggestion therein that it was intended to apply retroactively to conduct which took place before it became effective: People ex rel. Manczak v. Carpentier, supra; we do find it is intended to apply and operate prospectively only; the operative events requiring the application of the present section 14, namely, the officer's separation from the service before serving 20 years and his request for return of his contributions must occur after,

172

not before, it became effective: Keegan v. Board of Trustees, supra.

The judgment, or judgments, is/are, therefore, reversed, and the cause remanded, with directions to enter a judgment for the defendants.

Reversed and remanded, with directions.

DOVE, P. J., concurs.