Harry Salmons, Plaintiff-Appellant, v. Charles Dutz, Richard Kerrigan, James McCall, Louis Mumbower, and Earl Minder, as Members of the Board of Trustees of Police Pension Fund of City of Lincoln, Defendants-Appellees.

Gen. No. 10,135.

Third District.

February 21, 1958.

Released for publication March 10, 1958.

McConnell, Kennedy, McConnell & Morris, of Peoria, for plaintiff-appellant.

Woods & Woods, of Lincoln, for defendants-appellees.

PRESIDING JUSTICE CARROLL delivered the opinion of the court.

This is an action for a declaratory judgment involving the construction of Section 1 of "An Act to Provide for the setting apart, formation and disbursement of

a Police Pension Fund in Cities, Villages and incorporated towns having a population of not more than 200,000 Inhabitants," as amended (Par. 892, Chap. 24, Ill. Rev. Stats. 1955), commonly designated as the "Down-State Police Pension Fund Act" and the validity of a certain rule adopted by the Board of Trustees of the police pension fund of the city of Lincoln, Illinois implementing the provisions of said Act.

For convenience the portion of said Par. 892 pertinent on this review will be referred to herein as the "Act" and the same reads as follows:

" 'Policeman,' or 'policemen,' as used in this Act, shall include all persons who at the time this Act becomes effective, are now or have been or shall be employed by the police department or police service of such city, village or incorporated town, and all persons who are now, have been or shall hereafter be appointed to any position which is classified by the Civil Service Commission of such city, village or incorporated town, as in or a part of or connected with police service or police department of any such city, village or incorporated town, and all persons appointed, reappointed, reemployed or reinstated, sworn or designated by law as policemen of such city, village or incorporated town, and including any person who has served, is serving or shall hereafter serve in any capacity in the legally constituted police department or as a member of the police department or police service of any such city, village or incorporated town; provided, however, that no such policeman shall be entitled to receive any benefits under the terms of this Act unless (a) he shall make written application to the Board of Trustees hereinafter provided for to come under the provisions of this Act, (b) he shall be found upon the examination of a duly licensed physician selected by said Board of Trustees to be physically and mentally fit to perform the duties of a policeman, and (c) he shall

358

pay to the Fund a sum equal to the amount he would have paid had deductions been made from his salary during the period of his service extending from the date the municipality became subject to the provisions of this Act or the date of his original entry into the service, whichever is later; and provided, further, that no person appointed, reappointed, reemployed or reinstated to such police department or police service after July 1, 1953, shall be considered a policeman within the provisions of this Act unless at the time of his first appointment therein he was between the ages of twenty-one (21) and thirty-five (35), and unless he shall make written application to said Board of Trustees to come under the provisions of this Act and shall be found upon a medical examination of a duly licensed physician selected by said Board of Trustees to be then physically and mentally fit to perform the duties of a policeman."

The rule in question provides that police officers of the city of Lincoln in order to qualify for benefits from the pension fund are required to make contributions thereto at the rate specified in the Act from the date of their original entry into the service.

On July 1, 1921, the city of Lincoln had a population of more than 5,000 but less than 20,000 inhabitants and on that date became subject to the provisions of the Act. However, the city took no action to comply with the Act until February 3, 1954 at which time it adopted an ordinance creating a police pension fund, providing for a Board of Trustees of such fund, and thereafter monthly deductions were made from the salaries of policemen in the amount required by the Act and turned into said fund. Prior to February 3, 1954, no such deductions were made from the salaries of any of the city's policemen.

The plaintiff was appointed a member of the police department of the city of Lincoln on May 1, 1945.

359

Since February 3, 1954, contributions to the police pension fund have been deducted from his salary. He has not paid into the fund the amount which would have been deducted from his salary as pension fund contributions during the period from May 1, 1945 to February 3, 1954.

The controversy between the parties arises over the construction which is to be placed upon clause (c) of the Act which reads as follows:

"that no such policeman shall be entitled to receive any benefits under the terms of this Act unless. . . (c) he shall pay to the Fund a sum equal to the amount he would have paid had deductions been made from his salary during the period of his service extending from the date the municipality became subject to the provisions of this Act or the date of his original entry into the service, whichever is later."

As set forth in the complaint, the theory of plaintiff is that the following words in clause (c) to-wit: "the date the municipality became subject to the provisions of this Act" does not mean the date the city of Lincoln attained a population bringing it within the scope of the Act but was intended by the legislature to mean the date on which said city complied with the Act by establishing a police pension fund which was on February 3, 1954 and that the contributions of plaintiff should begin as of said date. Defendants, on the other hand, contend that the Act should be construed to mean that plaintiff, in order to qualify for benefits thereunder, is required to make contributions to the police pension fund covering the period from the date of his entry into the service on May 1, 1945 to February 3, 1954.

The trial court rejected plaintiff's theory and entered a declaratory judgment construing the words "from the date the municipality became subject to the provisions of this Act" to mean the date the city became subject to the provisions of the Act and hold-

ing valid the rule adopted by the Board of Trustees. From that judgment plaintiff has perfected this appeal.

In considering the question raised on this appeal, recognition must be accorded the well established principle that a statute is not open to construction where the language thereof is clear and unambiguous and conveys a clear and definite meaning. 50 Am. Jur. Sec. 225. If the legislative intention be plain from the language used the courts are not permitted to give the Act any other meaning than that therein expressed. In Sup v. Cervenka, 331 Ill. 459, the rule to which we refer is thus stated:

"It is an elementary rule in the construction of a statute that the intention of the legislature must primarily be determined from the language of the statute itself and not from conjectures *aliunde*. When that language is plain and unambiguous and conveys a clear and definite meaning there is neither necessity nor authority for resorting to statutory construction. If the words of a statute are plain and the legislative purpose manifest, that purpose must be given effect. The courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the legislature. They cannot read into a statute something that is not within the manifest intention of the law-making body as gathered from the statute itself. To depart from the meaning expressed by the words is to alter a statute—it is to legislate and not to interpret. If the obvious meaning of a statute should be followed by harsh consequences, such a result cannot influence the courts in administering the law."

In applying this rule to the instant case, the first question to be determined is whether the Act when given its plain and ordinary meaning renders its pro-

361

visions susceptible of misunderstanding. The Act covers three matters, viz., (1) it defines the word "policeman" as used in the Act, (2) it specified the conditions under which a policeman is entitled to benefits under the Act and (3) requires that persons appointed, reappointed, reemployed or reinstated must meet certain requirements in order to qualify for coverage under the Act. In addition to the foregoing, it contains a provision relating to persons appointed, reappointed, reemployed or reinstated after July 1, 1953. This provision sets forth the conditions under which such persons may qualify as "policemen" as defined in the Act.

 It is to be noted that in defining the word "policeman" or "policemen" the language used in the Act is broad and inclusive. It includes any person who has served, is serving or shall hereafter serve in a police department of the police service of a city. Certainly, the designation of the particular persons eligible for benefits under the Act could not be more definitely expressed. Then in equally plain language the Act goes on to state that none of the persons falling within such definition of "policemen" shall be entitled to any benefits under the Act unless they meet the conditions specified in clauses (a), (b) and (c) of the Act. Plaintiff admits, as is indicated by the stipulation in the record, that he is required to comply with conditions (a) and (b). Such admission eliminates any dispute as to the fact that plaintiff regards himself as a person included within the definition of a policeman as contained in the Act. This being true, it would seem to follow that if plaintiff is a "policeman" who is required to comply with the conditions included in clauses (a) and (b), then he must also comply with the conditions of clause (c). Eligibility for benefits under the Act is governed by compliance with all three conditions and not by compliance with

362

any lesser number. The language of the Act makes this plainly evident. Plaintiff argues however, that the words "such policeman" appearing in the proviso clause immediately preceding the three clauses containing conditions (a), (b) and (c) does not apply to him but only to persons who became policemen by appointment, reappointment, reemployment or reinstatement after July 1, 1953. In support of such argument, plaintiff points to various amendments to the Act adopted in 1943, 1947, 1949 and 1951, which it is contended, when considered with the 1955 amendment, discloses an intention on the part of the legislature to exempt plaintiff and those in a like category from compliance with the requirement that policemen make retroactive contributions to the pension fund. In undertaking consideration of the question as to what light such prior amendments might throw upon the intention of the legislature in enacting the present Act, we are constrained to revert to the rule previously referred to herein which permits resort to prior enactments upon a like subject only where the statute in question is ambiguous. If the legislative intent can be ascertained from the provisions of the statute, such intention will prevail. Blough v. Ekstrom, 14 Ill.App.2d 153; People v. Swedeberg, 351 Ill. App. 121. Disregard for such rule would of necessity mean the assumption by the courts of the power to legislate. Such power is vested only in the legislature.

There appears to be no uncertainty or ambiguity concerning the language of the Act. As applied to plaintiff's situation, it plainly states that in order to qualify for benefits under the Act, "he shall pay to the Fund a sum equal to the amount he would have paid had deductions been made from his salary during the period of his service extending from the date the municipality became subject to the provisions of this Act or the date of his original entry into the service,

363

whichever is later." Since the city of Lincoln became subject to the Act in 1921 and plaintiff's original entry into service was May 1, 1945, the amount of his salary deductions are to be computed from this later date.

Plaintiff argues that the words "from the date the municipality became subject to the provisions of this Act" should be held to mean the date the city took action to establish its police pension fund. The Act is mandatory upon municipalities and the date upon which compliance is required is fixed by the Act as of the time such municipality comes within the population limits fixed therein. The fact that in this case the city of Lincoln failed in its duty in that regard affords no ground for this court to alter or enlarge upon the provisions of the Act. If we subscribe to plaintiff's theory, we would in effect be substituting the words "from the date the municipality took action to comply with the Act" for the words now appearing in the Act. Determination as to the conditions under which policemen may avail themselves of the benefits to be derived from a pension fund is a legislative function and the particular policy adopted in that respect is not subject to judicial revision. The contention of plaintiff that the Act should not be held to comply retroactively in his case finds answer in the rule that where the express language of the Statute requires such application, then it is the duty of the court to so apply it. People v. Abbott, 274 Ill. 380. In the Act, policemen are defined as including persons who "have been" employed in the police department and persons who "have served" in such department. This use of the past tense must be taken to express the intention that all persons who are policemen regardless of the date of their appointment or employment are included within the provisions of the Act. The Act in question pointedly illustrates a situation where in order to give effect to a statute, the same must be interpreted as applying retrospectively.

■ It is noted that the parties argued to some extent the proposition as to whether the requirement that plaintiff pay the salary contributions accrued for the period from 1945 to 1954 operates to his detriment. Such arguments as well as those concerning the reasonableness of the enactment are not persuasive when addressed to a court. As the Supreme Court said in Sup v. Cervenka, supra, "the responsibility for the justice or wisdom of legislation rests upon the legislature, and it is the province of the courts to construe and not to make the laws."

For the reasons herein indicated, we are of the opinion that the conclusion reached by the trial court is correct and its judgment should be affirmed.

Affirmed.

REYNOLDS and ROETH, JJ., concur.