STATE EX REL. MONTY, Respondent, vs. TILLESON, City Clerk, and another, Appellants.

*March 8— April 11, 1939.*

For the appellants there was a brief by *Clifford A. Mullar-key*, city attorney, and *Barber, Keefe, Patri, Stillman & Nolan* of Oshkosh, and oral argument by *Mr. Mullarkey* and *Mr. Frank B. Keefe*.

For the respondent there was a brief by *A. Don Zwickey* of Clintonville, and *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Mr. Theo. W. Brazeau* and *Mr. Zwickey*.

FRITZ, J. The following facts appear without dispute. On April 19, 1910, the petitioner, J. J. Monty, was first elected chief of police of Clintonville,—a city of the fourth class at all times involved herein,—by its common council, and he duly filed his oath and bond, and qualified and acted pursuant to that appointment. At that time sec. 959—41, Stats., enacted as part of ch. 187, Laws of 1909, required all appointments for service by police officers after July 1, 1910, to be made by a police and fire commission; and provisions in that chapter made it mandatory for all cities of the fourth class to appoint such a commission. In accordance with those provisions a police and fire commission for Clintonville was appointed on April 27, 1910, by its mayor; and the commissioners organized as a board on July 14, 1910. It is not claimed that the city abolished that commission at any time prior to May 1, 1934, when the common council enacted an ordinance numbered 62, which the defendants claim operated to abolish the commission. In the meantime the city's police and fire commission, on June 16, 1910, appointed Monty chief of police, and on June 27, 1910, notified the common council

of that appointment going into effect on July 1, 1910. On that date Monty filed a new oath and assumed the office under that appointment. Thereafter no action was taken by the commission or the common council to remove Monty or appoint a chief of police until April 18, 1938, when the mayor appointed O. M. Goerlinger as chief and Monty as a member of the police force for daytime duty; and the council confirmed those appointments. No charges were ever made against Monty, and there never was a hearing for his removal.

The defendants concede that prior to the enactment by the city's common council of Ordinance No. 62 on May 1, 1934, Monty's tenure of office was to hold during good behavior; but the defendants contend that by reason of that ordinance,—which they claim operated to abolish the city's police and fire commission,—Monty's tenure of office during good behavior was likewise abolished; and that thereafter his removal could be effected by the appointment of a successor by the mayor and the confirmation thereof by the common council, without the making or filing of charges against him, or any hearing and removal pursuant thereto. That contention cannot be sustained. When the police and fire commission appointed Monty, on June 16, 1910, ch. 187, Laws of 1909,—which made it mandatory for cities of the fourth class to appoint a police and fire commission,—also prescribed that all appointments of police officers were to be made by such a commission (sec. 959—41$n$, Stats. 1909), and in addition made applicable to all such appointments the provision in sec. 959—45 (1), Stats., that the chiefs "shall hold their respective offices during good behavior, subject, however, to suspension or removal as herein provided, at any time for cause." Consequently, by virtue of the latter provision, Monty's appointment by the police and fire commission on June 16, 1910, was not for any definite period of time, but his tenure of office was to hold "during good behavior, subject . . . to suspension or removal . . . at any time for cause." That

provision has been continued in the statutes without any substantial change, and appears as sec. 62.13 (3) in the statutes of 1921–1937. As a result, at all times since Monty commenced serving as chief of police on July 1, 1910, under his appointment on June 16, 1910, his tenure of office has continued to be "during good behavior," subject only to "suspension or removal . . . for cause" as provided in sec. 959—45 (1), Stats. 1909, and sec. 62.13 (3), Stats. 1921–1937; and during all that time that mandatory provision as to tenure of office was applicable to Clintonville, regardless of whether it had or did not have a police and fire commission. The application thereof was not affected by amendments, which were made in 1911, 1913, and 1915, of the provision in ch. 187, Laws of 1909, which required all cities to have a police and fire commission. It is true that the latter provision was amended by ch. 418, Laws of 1911, so as to give cities of the fourth class the option to adopt the provisions of ch. 187, Laws of 1909, in respect to having such a commission, and by amendments in 1913 and 1915 such cities were given the power to rescind such adoption. In Clintonville the mayor had appointed a commission on April 19, 1910, under the mandatory provisions of ch. 187, Laws of 1909, and on April 16, 1912, the common council passed a resolution expressly adopting the provisions in ch. 418, Laws of 1911 (including sec. 959—41*l*), relating to a police and fire commission. That adoption was never expressly abrogated, and in ordinances adopted on October 3, 1916, and August 5, 1919, respectively, in relation to the election or appointment of the various officers of the city, the common council provided that "the chief of police . . . shall be appointed by the board of police and fire commissioners, pursuant to section 959—41," Stats. 1915. By ch. 242, Laws of 1921, the General Charter Law, the legislature enacted subs. (1), (2), and (3) of sec. 62.13, Stats., which provided:

Sub. (1) *"Commissioners.* Each city shall have a board of police and fire commissioners consisting of five citizens. . . . "

Sub. (2)   *"Exception.   Subsection (1)* shall not apply to cities of less than four thousand population except by ordinance adopted by a majority of all the members of the council.   A repealing ordinance may be adopted by a like vote."

Sub. (3)   *"Chiefs.*   The board shall appoint the chief of police and the chief of the fire department, who shall hold their offices during good behavior, subject to suspension or removal by the board for cause."

In view of the express "exception" in sub. (2), the provision in sub. (1), requiring "each city" to have a board of police and fire commissioners, was not applicable to cities of the fourth class "except by ordinance adopted by a majority of all the members of the council;" but that exception is confined to the application of sub. (1) of sec. 62.13, requiring each city to have a police and fire commission.   There is no exception whatsoever in respect to the application of the provision in sub. (3), that the department chiefs "shall hold their offices during good behavior, subject to suspension or removal by the board for cause."   That provision is and has been applicable at all times since ch. 187, Laws of 1909, made the provisions of sec. 959—45 (1) (ch. 247, Laws of 1897) applicable also to every city of the fourth class without any exception or the exercise of any option on its part.   Consequently, Monty's tenure of office, by reason of that provision as it was in sec. 959—45 (1), Stats. 1909, at the time of his appointment on June 16, 1910, and was continued in sub. (3) of sec. 62.13, Stats. 1921–1937, was never dependent upon or affected by any ordinance or action on the part of the city by which it created or may have abolished its board of police and fire commissioners.

Hence, it is not necessary to determine herein the effect of the two ordinances enacted on April 4, 1924, and numbered 11 and 22, respectively, and Ordinance No. 11, re-enacted on April 16, 1931, in respect to the creation of a police and fire commission; or the effect of Ordinance No. 1, enacted on April 16, 1931, by which the city adopted ch. 62, Stats. 1929,—the General Charter Law,—which included

sec. 62.13, Stats., in relation to having a police and fire commission and the appointment and tenure of office of the chiefs of the departments; or the effect and result of Ordinance No. 2, enacted on April 16, 1931, to repeal Ordinance No. 11, enacted April 4, 1924, and of Ordinance No. 62, enacted on May 1, 1934, and entitled an ordinance abolishing Ordinance No. 22 creating a police and fire commission. Whatever may have been the effect of those ordinances in respect to creating or abolishing a police and fire commission, none of them could legally alter or affect the requirements of sec. 959—45 (1), Stats. 1909–1919, and sec. 62.13 (3), Stats. 1921–1937, as to the continued tenure of office of the department chiefs during good behavior subject to removal for cause.

It follows that regardless of whether the city of Clintonville has effectively abolished its police and fire commission, or whether the authority to appoint, suspend, or remove its police chief was or is vested in its mayor, the common council, or a police and fire commission, Monty's tenure of office since July 1, 1910, has been to hold during good behavior subject only to suspension or removal for cause found upon a proper hearing pursuant to charges duly filed against him. As the attempted demotion of Monty in April, 1938, by acts of the mayor and common council from chief of police to but a member of the police department assigned to daytime duty was in effect a removal (*McCarthy v. Steinkellner*, 223 Wis. 605, 270 N. W. 551, 271 N. W. 374), which was unauthorized and illegal in the absence of charges and proof establishing good cause upon proper hearing, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.