ED JACKAMONIS, Speaker Wisconsin State Assembly
On behalf of the Assembly Committee on Organization, you request my opinion on three questions relating to the authority of the City of Milwaukee to set a mandatory retirement age for its police and fire chiefs.
The first question you ask is:
 1. Does the City of Milwaukee currently have the authority to set a mandatory retirement age for its fire and police chiefs?
In my opinion the city does have such authority. The exercise of such authority, however, is subject to the prohibition against age discrimination contained in the Federal Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq.
It must be first noted that a mandatory retirement date is already in effect for Milwaukee police and fire chiefs if they were first employed on or after July 30, 1947, by virtue of the terms of the Employees Retirement System of the City of Milwaukee (ERSCM). This retirement system created by ch. 396, Laws of 1937, has since July 30, 1947, covered both the police and fire chiefs (if members of the system). Ch. 441, Laws of 1947. BY virtue of the home rule provisions of Wis. Const. art. XI, sec. 3, and the specific declaration by the Legislature in ch. 704, sec. 3, Laws of 1951, that the ERSCM is a matter of local concern, such system is incorporated in ch. 36 of the Milwaukee City Charter. Future references to the ERSCM are as it appears in the Milwaukee City Charter (1977) unless otherwise specified. *Page 233 
The Milwaukee City Charter states in material part:
 36.02 Definitions. Except where the context plainly requires different meaning, the following words and phrases shall have the following meanings:
. . . .
 BOARD shall mean the "annuity and pension board" provided for in Section 36.15 of this act. [Ch. 396, Laws of 1937] to administer the retirement system.
. . . .
 FIREMAN shall mean a person first employed on or after July 30, 1947, in the fire department whose duty it is to extinguish fires and to protect property and life therefrom, including the chief
and all other firemen officers.
. . . .
 POLICEMAN for the purposes of this act shall mean a person first employed on or after July 30, 1947, in the police department whose duty it is to preserve peace and good order of the city, having the power of arrest without warrant, including the chief and all other policemen officers and police aides.
 36.03 Membership. (1) ELIGIBILITY. The following shall be eligible to membership in the system:
. . . .
 (b) Any person who becomes an employe after January 1, 1938, and who is eligible under the provisions of this act [ch. 396, Laws of 1937] and who shall satisfy the following conditions:
1. Who is a full time employe, or. . . .
36.05(1) Benefits.
. . . .
 (c) Age limit. A member in active service, except firemen and policemen, who has attained the age of seventy (70), and in the case of firemen and policemen the age of sixty-three (63), shall be retired at the end of the month at which such age is *Page 234 attained, except that elected officials and their deputies attaining such age shall be retired at the end of the term for which they have been elected. Whenever facts are in dispute concerning the retirement age of a member, the decision of the board shall be final. The board may permit an employe to continue in the service if a request has been made to the board by the head of the city department or city agency employing such member, but such further employment shall be for a period of time not exceeding two (2) years next following such request or renewal thereof.
(Emphasis supplied.) Thus the ERSCM requires the police and fire chief participants in that fund to retire at age 63 unless extended. Since the above quoted sections are, in all material respects, provided by ch. 441, Laws of 1947, we need not at this point concern ourselves with the question of exercise of home rule authority. Since election to not participate in the ERSCM as authorized by Milwaukee City Charter sec. 36.03(2), requires one to waive "all present and prospective benefits which would otherwise inure to him by his participation in the system," such possibility is not worthy of discussion except in the instance of participants in the Firemen's Annuity and Benefit Fund of Milwaukee (FABFM) and Policemen's Annuity and Benefit Fund of Milwaukee (PABFM).
The FABFM established by ch. 423, Laws of 1923 and PABFM established by ch. 589, Laws of 1921, predate the ERSCM. These former two funds were closed to new members on July 30, 1947. Ch.589, Laws of 1921. I am informed that the incumbent chief of police and chief engineer of the fire department are both members of these predecessor funds rather than the ERSCM. Neither the PABFM nor the FABFM requires retirement at a mandated maximum age. The question which necessarily then arises is "can the terms of the FABFM and PABFM be changed to include a mandatory retirement age?" It is my opinion that the "home rule" authority granted to the City of Milwaukee is sufficient to insert a maximum retirement age into the FABFM and PABFM.
Wisconsin Constitution art. XI, sec. 3, reads in part:
 SECTION 3. Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments *Page 235 
of the legislature of statewide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature.
Relevant declarations by the Legislature are entitled to great weight in determining the scope of home rule. State ex rel.Brelsford v. Retirement Board, 41 Wis.2d 77, 85, 163 N.W.2d 163
(1968). Section 62.13(12), Stats., specifically provides that the provisions of ch. 589, Laws of 1921 (PABFM) and ch. 423, Laws of 1923 (FABFM) "shall be construed as an enactment of statewide concern for the purpose of providing a uniform regulation of police and fire departments." See also sec. 66.01(15), Stats., which contains identical provisions. These statutory sections had their genesis in ch. 193, Laws of 1935. More recently, however, the Legislature, by ch. 704, sec. 3, Laws of 1951 (PABFM) and ch. 279, sec. 3, Laws of 1953 (FABFM), determined that the narrow area of firemen's and policemen's pension funds for the City of Milwaukee were to be construed as matters of local affairs and government. Chapter 279, sec. 3, Laws of 1953, relating to the FABFM states:
 SECTION 3. Chapter 423, laws of 1923, section 1 (69) and (70) are created to read: (Chapter 423, laws of 1923) Section 1. (69) For the purpose of giving to cities of the first class the largest measure of self-government with respect to pension annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this section are matters of local affair and government and shall not be construed as an enactment of statewide concern. Cities of the first class are hereby empowered to amend or alter the provisions of this section in the manner prescribed by s. 66.01 of the statutes; provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any person who is a member of the system prior to the effective date of such amendment or alteration. For the further purpose of safeguarding the stability of pension systems in cities of the first class the provisions of chapter 396, laws of 1937, section 15(2), as created by chapter 441, laws of 1947, shall apply to this chapter.
Chapter 704, sec. 3, Laws of 1951 relating to the PABFM is identical in effect. Does the authority to "amend or alter" the system include the authority to impose a maximum retirement age on members of *Page 236 
the fund? In my opinion it does. Retirement plans commonly have provisions which require or permit the retirement of an employe at a given age. See, e.g., ERSCM, ch. 396, sec. 5(1)(a), Laws of 1937; Wisconsin Municipal Retirement Fund, sec. 66.90(9), Stats. (1943); Wisconsin Retirement Fund, sec. 41.11(1), Stats., as amended, ch. 221, sec. 318, Laws of 1979. The legislative intent to allow and authorize home rule in matters concerning the PABFM and FABFM includes the right to establish a mandatory retirement date since that is an accepted element of retirement plans. We must further inquire at this point, however, whether amendment of the subject funds to insert a mandatory retirement age is a matter of local concern under Wis. Const. art. XI, sec. 3. Notwithstanding the statement of intent of the Legislature that the subject retirement fund modifications should be matters of local concern, that determination is for the courts. Wisconsin Constitution art. XI, sec. 3 does not leave it to the municipality or Legislature to define what is a local affair or what is a matter of statewide concern but requires such ultimate determination be made by the courts. Brelsford, 41 Wis.2d at 82. In Brelsford a retired Milwaukee policeman brought an action to compel the PABFM Board to pay him his monthly pension even though he was then employed by the Milwaukee School Board. The PABFM as created by the Legislature prohibited payment of an annuity to one who "shall be employed upon salary or wages in any branch of the service of such city." Ch. 589, sec. 1(40), Laws of 1921. The Board interpreted this prohibition to apply to employes of the Milwaukee Public School system. By charter ordinance no. 22 enacted in 1927, Milwaukee amended the prohibition to apply only to an annuitant "employed by the city of Milwaukee in any service under the jurisdiction of the city service commission or the fire and police commission." The prohibition as amended did not include Milwaukee Public Schools. The court held that the terms of the PABFM concerned were a matter of local concern in the following words:
 So here, it appears that although the broad area of police regulation is predominately a matter of statewide concern, nevertheless, the modification of the police pension program for cities of the first class — particularly where that modification merely enables retired policemen to receive their pensions while employed as schoolteachers or in other noncivil service jobs in Milwaukee — seems overwhelmingly to be a matter of predominate local concern. It would seem that the state would *Page 237 
have little interest in whether a retired policeman taught school in Milwaukee or in some other municipality. This is a matter of unique interest to Milwaukee.
 Appellant cites Columbia County v. Wisconsin Retirement Fund and Barth v. Shorewood to support the view that police pensions are a matter of statewide concern. However, in Barth this court was dealing with police and fire pensions for villages of 5,000 or more under sec. 61.65, Stats. The need for uniformity among such villages on such pension matters is apparent; so, too, in Columbia was the need for uniformity in establishing county pension systems.
Brelsford, 41 Wis.2d at 86-87. It is my view that, if presented with the question, the courts would determine that insertion of a mandatory retirement age into the PABFM and FABFM is a matter of local concern appropriate for home rule.
It must be noted before concluding that all mandatory age requirements are subject to the United States Age Discrimination in Employment Act. In 1978, Congress amended the Age Discrimination in Employment Act (ADEA), 29 U.S.C. sec. 621 etseq. The Act makes it unlawful for employers, including the state, its subdivisions and cities, to discharge an employe because of the employe's age. 29 U.S.C. sec. 623(a)(1). Originally, the Act protected persons who were at least 40 but less than 65 years of age. 29 U.S.C. sec. 631. The 1978 amendments extended the protection of the Act, effective January 1, 1979, to persons who are at least 40 but less than 70 years of age. 29 U.S.C. sec. 631(a).
Prior to the 1978 amendments, it was not unlawful to discharge an employe because of age if (1) age was a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or (2) the discharge was pursuant to the terms of a bona fide employe benefit plan, such as a retirement, pension or insurance plan, which was not a subterfuge to evade the purposes of the Act. 29 U.S.C. sec. 623(f)(1) and (2). Thus, in 63 Op. Att'y Gen. 530 (1974), I stated that compulsory retirement of protective occupation participants at age 55, pursuant to secs. 41.02(11)(a) and (23), and 41.11, Stats., came within the ADEA exception for bona fide employe retirement plans. *Page 238 
The 1978 ADEA amendments, however, eliminated the second exception. Consequently, effective April 6, 1978, an employe benefit plan no longer could require or permit the involuntary retirement of any employe protected by the Act.29 U.S.C. sec. 623(f)(2).
In order to establish a bona fide occupational qualification (BFOQ) defense to a complaint of discrimination under the ADEA, an employer must have a reasonable factual basis to believe and must demonstrate:
 (1) that all or substantially all of a class of employes would be unable to perform a job safely and efficiently, and that the BFOQ is reasonably necessary to the essence of the employer's business, Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 591 (5th Cir. 1978); Hodgson v. Greyhound Lines, Inc., 499 F.2d 859, 863 (7th Cir. 1974), cert. denied, 419 U.S. 1122
(1975); or
 (2) that it is impracticable to deal with persons on an individualized basis because some members of the class possess a trait precluding safe and efficient job performance which cannot be ascertained by means other than knowledge of the person's class membership. Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224, 235 (5th Cir. 1976).
In Aaron v. Davis, 414 F. Supp. 453, 461 (E.D. Ark. 1976), where the court held unlawful the mandatory retirement of two assistant fire chiefs at age 62, the court emphasized:
 [T] he quantum of the showing required of the employer is inversely proportional to the degree and unavoidability of the risk to the public or fellow employees inherent in the requirements and duties of the particular job. Stated another way, where the degree of such risks is high and methods of avoiding same (alternative to the method of a mandatory retirement age) are inadequate or unsure, then the more arbitrary may be the fixing of the mandatory retirement age. But at no point will the law permit, within the age bracket designated by the statute, the fixing of a mandatory retirement age based entirely on hunch, intuition or stereo-typing, i.e., without any empirical justification. *Page 239 
(Emphasis added.) The employer has the burden of establishing that its mandatory retirement program falls within the BFOQ qualification exemption under the ADEA. Such BFOQ determination need not relate to the position of chief but may be applied to the "generic class" of policemen or firemen generally, EqualEmployment Opportunity Commission v. City of Janesville, No. 79-2523, slip op. at 6-7 (7th Cir. Sept. 23, 1980).
Normally, it will be necessary to consider evidence such as the nature of the job duties, medical evidence relating to the aging process and to the ability of medical tests to distinguish functional from chronological age, and statistical evidence concerning accident rates. Houghton v. McDonnell Douglas Corp.,553 F.2d 561, 563-64 (8th Cir. 1977), cert. denied, 434 U.S. 966
(1977); Hodgson, 499 F.2d at 863. A mandatory retirement age prior to age 70 is therefore precluded unless it is determined that the lower age is a bona fide occupational qualification.
Your second question is:
 2. If the answer to Question #1 is yes, what procedure must the city use to implement such authority and put it into effect: charter ordinance, regular ordinance, etc.?
Wisconsin Constitution art. XI, sec. 3, empowers cities to exercise "home rule" in matters of local concern and specifically provides that "[t]he method of such determination shall be prescribed by the legislature." Section 66.01, Stats., entitled "Home rule; manner of exercise" specifically requires that change be by "charter ordinance." Section 66.01(4), Stats., provides:
 Any city or village may elect in the manner prescribed in this section that the whole or any part of any laws relating to the local affairs and government of such city or village other than such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village shall not apply to such city or village, and thereupon such laws or parts thereof shall cease to be in effect in such city or village.
The charter ordinance method was clearly intended to apply to the three retirement systems herein discussed since the following language was made applicable to all three by the Legislature: "Cities of the first class are hereby empowered to amend or alter the provisions *Page 240 
of this act in the manner prescribed by section 66.01 of the statutes." See ch. 441, sec. 31, Laws of 1947, relating to the ERSCM, ch. 279, sec. 3, Laws of 1953, relating to the FABFM and ch. 704, sec. 3, Laws of 1951 relating to the PABFM. It therefore appears that the Legislature has designated the charter ordinance amendment method as the vehicle to use in changing any of the three discussed retirement systems in cities of the first class.
Your third question is:
 3. If the answer to Question #1 is yes, can such a mandatory retirement age be applied to the incumbent holding that office at the time the mandatory retirement age policy is adopted?
It is my opinion that a mandatory retirement age can be established to apply to the incumbent fire and police chiefs.
As I stated in answer to question 1, I view the establishment of a mandatory retirement age as a matter of local concern, already contained in ERSCM and which may by charter ordinance amendment be inserted into the FABFM and PABFM. Is the implementation of a mandatory retirement age under home rule powers an infringement of contractual rights to members of the systems who are still employed by the city? In my opinion there is no such infringement.
Two basic principles prevail throughout the law covering public employes' pension rights. The first established principle is that no rights inure to the benefit of an employe by the fact that the employe is required to make a contribution to a pension fund out of his salary. No contractual rights are created by the employe's contribution. In fact, the deduction from the employe's pay check is not construed to be a payment by the employe or construed to be a removal of funds from the employe's possession. Contribution to the fund is made by the public out of public money. State exrel. Risch v. Trustees, 121 Wis. 44, 49, 98 N.W. 954 (1904). A pension fund member's employment is accepted,
 with knowledge that certain amounts will be deducted each month and placed in the pension fund; such are not first segregated from the public funds so as to become the private property of the officers and then turned over to the pension fund, but are set aside or transferred from one public fund to another, and remain public money to be dispensed or withdrawn at will and *Page 241 
over which the officer from whose salary they are deducted has no control and in which he has no right.
Blough v. Ekstrom, 14 Ill. App. 2d 153, 144 N.E.2d 436, 440
(1957). Member's contributions to the fund create no vested rights to the terms of the PABFM or FABFM in the absence of a specific statutory or contractual provision creating such vested rights. State ex rel. McCarty v. Gantter, 240 Wis. 548, 555,4 N.W.2d 153 (1942). Does the language of ch. 279, sec. 3, Laws of 1953 and ch. 704, sec. 3, Laws of 1951 provide such a contractual right in the words:
 Cities of the first class are hereby empowered to amend or alter the provisions of this section in the manner prescribed by section 66.01 of the statutes: provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any person who is a member of the system prior to the effective date of such amendment or alteration.
(Emphasis supplied.) I think not, for to interpret this language to preclude any modification in the systems affecting existing members of the system would render the home rule language a nullity. By virtue of ch. 441, secs. 32 and 33, Laws of 1947, the PABFM and FABFM were closed to new members. Thus when the home rule authority was authorized over these systems by the Legislature, by ch. 279, Laws of 1953 and ch. 704, Laws of 1951, the systems were already closed to new members. A literal reading of the prohibition against modifying "annuities, benefits orother rights" of a person who is a member of the system would effectively prevent any changes whatsoever in these two retirement systems via the intended home rule delegation. I therefore construe the language just previously quoted to refer to rights vested at retirement.
The second established principle relative to the law governing public employes' pension rights is that any rights an employe may have to a pension are determined at retirement regardless of whether such rights had become vested previously by statute or contract. "[T] he right of a retired . . . officer to a pension . . . is governed entirely by the rules adopted and in force at the date of his retirement." State ex rel. Lemperle v.McIntosh, 75 Ohio App. 164, 60 N.E.2d 486, 489 (1944) (citations omitted); Kleiner v. Milwaukee, 270 Wis. 152, 155, 70 N.W.2d 662
(1955). The rights, while established contractually *Page 242 
and by ordinance, are determined under the provisions of the PABFM or FABFM only as they exist at the time of retirement. SeeState ex rel. Smith v. Annuity Pension Board, 241 Wis. 625,629, 6 N.W.2d 676 (1942). I do not perceive in this situation any vested or contractual rights that alter the general rule. Moreover, since home rule is granted, not by statute, but by the constitution, an area appropriate for exercise under constitutional home rule is not subject to limitation by statutory law.
Is there, however, some tenure or property right in the offices of chief that precludes imposition of a mandatory retirement age upon the incumbents?
Wisconsin has long recognized that there is a personal property interest in the right to retain public office. The property interest is a limited one, however, and where the office is a creation of statute, the right to retain the office must be determined from the statute. No statute is beyond repeal so no office created by statute can be considered permanent. The right to hold statutory office can be no more permanent than the office itself so that property interest could never be a permanent or vested right. Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595
(1913). Just as the right to retain office must be derived from statute, the property right in public employment, the right to be removed only for cause can only exist if it is authorized by state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564,577 (1972). Section 62.50(6), Stats., relating solely to cities of the first class provides:
 APPOINTMENT OF CHIEFS. If a vacancy exists in the office of chief of police or in the office of chief engineer of the fire department, the board by a majority vote shall appoint proper persons to fill such offices respectively, subject to suspension and removal as provided in this section. When filling a vacancy in the office of chief of police or in the office of chief engineer of the fire department occurring after June 15, 1977, the board shall appoint the person to a term of office the number of years and commencement date of which shall be set by the city of the 1st class by ordinance and which may not exceed 10 years, or for the remainder of an unexpired term.
(Emphasis supplied.) *Page 243 
This section had its beginning in ch. 856, Laws of 1911 and continued in substantially the same form (except for the ten-year term limitation) to the present time. It could be thus argued that since sec. 62.50(6), Stats., provides for appointment only "if a vacancy exists" and since the sec. 17.03, Stats., definition of what causes a vacancy does not include mandatory retirement, the chiefs can only be removed for cause and have tenure for life. While I find no courtmade law interpreting sec.62.50(6), Stats., there is a case interpreting sec. 62.13(3), Stats., applying to cities of the second, third and fourth classes. Section 62.13(3), Stats., states: "CHIEFS. The board shall appoint the chief of police and the chief of the fire department, who shall hold their offices during good behavior, subject to suspension or removal by the board for cause." InState ex rel. Monty v. Tilleson, 231 Wis. 110, 285 N.W. 501
(1939), one J.J. Monty who had been elected Chief of Police of Clintonville by its City Council on April 19, 1910, and on June 16, 1910, appointed Chief by the city's police and fire commission, was replaced on April 18, 1938, when the mayor appointed another person chief. No charges were ever made against Monty, and there never was a hearing for his removal. The Wisconsin Supreme Court in holding that Monty's tenure of office was during good behavior subject only to suspension or removal for cause stated:
 When the police and fire commission appointed Monty . . . Laws of 1909 . . . made applicable to all such appointments the provision of Sec. 959-45 (1), Stats [now Section 62.13(3)] that chiefs "shall hold their respective offices during good behavior, subject, however, to suspension or removal as herein provided for cause." Consequently, by virtue of the latter provision, Monty's appointment by the police and fire commission on June 16, 1910, was not for any definite period of time, but his tenure of office was to hold "during good behavior, subject . . . to suspension or removal . . . at any time for cause."
. . . .
 It follows that regardless of whether the city of Clintonville has effectively abolished its police and fire commission, or whether the authority to appoint, suspend, or remove its police chief was or is vested in its mayor, the common council, or a police and fire commission, Monty's tenure of office since July 1, 1910, has been to hold during good behavior subject *Page 244 
only to suspension or removal for cause found upon a proper hearing pursuant to charges duly filed against him.
Monty, 231 Wis. at 113, 116. This case did not involve mandatory retirement and the court did not therefore consider the mandatory retirement provisions in the same section of the statutes. See
sec. 62.13(7)(c)3., Stats. (1937).
The ERSCM requires police and fire chiefs (if employed by the department after July 30, 1947) to retire at age 63 unless extended. This conflicts with a literal reading of sec. 62.50(6), Stats., which provides for appointment of a chief only "if a vacancy exists." Since the Supreme Court has not had the occasion to construe these statutes together we must use those general rules of construction previously set down by the court. Three rules appear to apply. In Pruitt v. State, 16 Wis.2d 169,114 N.W.2d 148 (1962), the court stated: "Statutes must be construed together and harmonized." The court in Raisanen v. Milwaukee,35 Wis.2d 504, 151 N.W.2d 129 (1967), stated: "Conflict between different statutes are not favored and will not be held to exist if they may otherwise be reasonably construed." In Brunette v.Bierke, 271 Wis. 190, 72 N.W.2d 702 (1955), the court stated: "In interpreting these statutes we must, if it is possible to do so harmonize and reconcile them. We should avoid a construction which creates an inconsistency if a reasonable interpretation can be adopted which will not do violence to the words of the provisions."
An interpretation of sec. 62.50(6), Stats., and ch. 396, sec. 5, Laws of 1937 as created by ch. 441, Laws of 1947 that a chief holds office without regard to length of service, age, or tenure would give meaning to sec. 62.50(6) but would give no meaning to and in fact would contradict ch. 396. Such statutory construction is not in conformance with the above cases. On the other hand the two provisions can be construed together and harmonized as the court has indicated is the rule, by construing the meaning of the two sections to be that a chief holds office during good behavior, subject to suspension or removal for cause except that a chief who has reached the mandatory retirement age specified in his respective retirement system may be retired at that age. Such a construction is logical and avoids conflict between the two stated laws.
I am not unmindful of the fact that the two incumbent chiefs are members of retirement systems, the FABFM or PABFM, neither of *Page 245 
which systems contains a mandatory retirement age. It is clear, however, that mandatory retirement where required by statute creates a vacancy within the meaning of sec. 17.03, Stats. Stateex rel. Thompson v. Gibson, 22 Wis.2d 275, 295, 125 N.W.2d 636
(1964). Since I have concluded above in answer to question 1 that mandatory retirement is a matter of local concern, that conclusion is not altered by the language of sec. 62.50(6), Stats., which authorizes appointment of a chief "if a vacancy exists." I find nothing in the history of the FABFM, PABFM and ERSCM which indicates that sec. 62.50(6), Stats., was intended to be operative under the FABFM and PABFM but not operative under the ERSCM. I therefore conclude that sec. 62.50(6), Stats., would not be in conflict with a charter ordinance amendment requiring mandatory retirement at a specific age.
BCL:WMS